## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD ELLIOTT KOGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **2:05cv850** |
| | )   **ELECTRONIC FILING** |
| ROBERT HALF INTERNATIONAL, | ) |
| ROBERT HALF LEGAL, | ) |
| APARNA SHARMA, | ) |
| | ) |
| Defendants. | ) |

## OPINION

Todd Elliott Koger ("plaintiff"), a pro se litigant with some legal education who has filed no fewer than six prior actions in this district since 1994 advancing various claims of discrimination, each of which has been adversely resolved against plaintiff for lack of merit, commenced this action seeking monetary relief for alleged denial of employment opportunities due to purported race and age discrimination. Presently before the court is defendant's motion for summary judgement. For the reasons set forth below, the motion will be granted.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. National

State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp.,967 F.2d 846 (3d Cir. 1992). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted. Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of North America, 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 113 S.Ct. 1262 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

Defendants move for summary judgment based on the sufficiency of the evidence plaintiff has to support his claims. Plaintiff counters with an attack on the timeliness and sufficiency of defendants' evidence. Plaintiff bears the burden of proving each essential element

of the causes of action raised by the complaint.

A plaintiff may elect to present either direct or indirect evidence to prove a claim of unlawful discrimination. Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998). Plaintiff contends that his claims are based on direct evidence of discriminatory animus by the employer's decision-maker.

A plaintiff seeking to proceed with a claim of discrimination based on the direct evidence approach "faces a high hurdle." Connors v. Chrysler Financial Corp., 160 F.3d 971 (3d Cir. 1998). "Under the standard announced by Justice O'Conner's controlling opinion in Price Waterhouse v. Hopkins, [490 U.S. 228, 277 (1989)] 'the evidence must be such that it demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.'" Connors, 160 F.3d 976. If the plaintiff satisfies this "rigorous" standard, then the burden shifts to the employer to show that it would have made the "same decision even in the absence of the impermissible consideration." Salkovitz v. Pioneer Electronics, Inc.,188 Fed. Appx. 90, 93 (3d Cir. 2006).

Notwithstanding plaintiff's contentions and as more fully explained below, the record lacks sufficient evidence to support a direct evidence approach on several scores, not the least of which is the lack of competent proof that plaintiff actually became employed by Robert Half International or Robert Half Legal. Because plaintiff lacks sufficient evidence to meet the rigorous standard needed to invoke the Price Waterhouse approach with regard to any adverse employment action brought into question by his complaint, the court will analyze his claims using the familiar tripartite approach governing claims based on indirect evidence of discrimination. See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc) (summarizing tripartite approach).

It is well-settled that claims of discrimination based on circumstantial evidence are to be evaluated at summary judgment using the shifting burdens of proof initially established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). St. Mary Honor

Center v. Hicks, 509 U.S. 502, 506 (1993); Waldron v. SL Industries, Inc., 56 F.3d 491, 495 (3d Cir. 1995) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).  Under this framework the parties' respective evidentiary burdens have been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facia case of discrimination. Second, if the plaintiff succeeds in proving the prima facia case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981) (citation omitted).

Under the indirect evidence approach a plaintiff must present a prima facia case of discrimination.  Keller, 130 F.3d at 1108.  The major purpose of the prima facia case is to eliminate the most obvious lawful explanations for the defendant's adverse employment action and raise a presumptive inference of discrimination.  Pivirotto v. Innovative Systems, Inc., 191 F.3d 344,  352 (3d Cir. 1999) (citing Burdine, 450 U.S. at 253-54 ("[t]he prima facia case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection.")).  A prima facia case raises an inference of discrimination because the presumed circumstances, if left unexplained, indicate it is likely that the defendant's actions were based on consideration of impermissible factors.  Id.  (quoting Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978)).

There is no talismanic formula for presenting a prima facia case.  Jones v. School District of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999) ("the elements of a prima facia case depend on the facts of the particular case").  The relevant inquiry is whether the plaintiff has suffered an adverse employment action under circumstances which raise an inference of unlawful discrimination.  Waldron, 56 F.3d at 494.  Plaintiff's burden at this step is "minimal" and is

4

viewed as a means of presenting a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. Id.; see also Furnco, 438 U.S. at 577.

If the plaintiff presents a prima facia case, the second stage of the McDonnel Douglas paradigm requires the defendant to articulate a legitimate explanation for the adverse employment action at issue. Keller, 130 F.3d at 1108. The defendant's burden at this step is one of production, not persuasion, and the court's consideration of it "can involve no credibility assessment." St. Mary's Honor Center, 509 U.S. at 509. If the defendant meets this burden, the presumption of discrimination created by the prima facia case "drops" from the case. St. Mary's Honor Center, 509 U.S. at 511; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

Once the defendant has met its burden of production and provided a legitimate explanation for its adverse employment action, the court's analysis turns to the third and final step of the inquiry, which is usually the most critical in resolving a motion for summary judgment. Jones, 198 F.3d at 410. At this juncture the plaintiff must be afforded the "opportunity to [present evidence that is sufficient to] prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. At trial, the plaintiff must have evidence that could convince the finder of fact "both that the [defendant's] reason was false, and that discrimination was the real reason." St. Mary's Honor Center, 509 U.S. at 515. This is because while the burden of production under the McDonnell Douglas analysis shifts, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Jones, 198 F.3d at 410 (quoting Burdine, 450 U.S. at 252-53 (1981)).

In general, a plaintiff may establish a prime facia case by demonstrating that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse

employment action, and (4) the circumstances raise an inference of discrimination, such as where similarly situated individuals outside the protected class were treated more favorably. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002); see also  Sheridan v. E. I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996) (en banc), cert. denied, 521 U.S. 1129 (1997) (discussing nature and purpose of prima facia case).  The central focus of the inquiry is always whether the employee is being treated less favorably because of race, religion, sex or national origin. Pivirotto, 191 F.3d at 352 (quoting International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977)).  The plaintiff ultimately must be able to produce "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." Id. at 355.  (quoting O'Connor v. Consolidated Coin Caterer's Corp., 517 U.S. 308, 312 (1996)).

Here, plaintiff filed a verified complaint on June 20, 2005, setting forth allegations in support of purported violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1968 and the Pennsylvania Human Relations Act.  Under penalty of perjury plaintiff alleged that on August 30, 2004, he contacted defendants' Pittsburgh office and requested consideration for an advertised employment opportunity.  Complaint at ¶5.  He discussed with defendant Aparna Sharma his education, experience and knowledge of the law and in response defendant Sharma suggested plaintiff was perfect for immediate vacancy and that he should come into her office and complete all required application forms.  Complaint at ¶¶ 6-7.  Plaintiff did so and took some preliminary tests.  Complaint at ¶¶ 8-9.  Plaintiff performed well on the tests.  Complaint at ¶¶ 8-9.  Plaintiff was interviewed by defendant Sharma and received excellent ratings for appearance, intelligence and personality.  Plaintiff formed the impression during the interview that he was being considered for an immediate placement that would start the next day, pay $40,000.00 per year and have excellent benefits.  Complaint at ¶¶ 6, 10 - 11.  Plaintiff also formed the impression that he would receive directions about where to report by the end of the day. Complaint at ¶ 10.  After plaintiff did not hear from defendants that evening, he called for

directions.  Complaint at ¶ 11.  At that point defendant Sharma advised plaintiff that "it's difficult to place an African American male over forty in the Pittsburgh legal community." Plaintiff assumed that this statement indicated defendant Sharma had perceived his race, gender and age as barriers to the promised position paying $40,000.00 per year.  Complaint at ¶ 11.

Defendant Sharma next asked plaintiff if he would be interested in an immediate permanent position paying in the mid $30,000.00 that would start the next day.  Plaintiff indicated he would, but defendant Sharma again refused to provide directions to the specific location.  Complaint at ¶ 14.  Thereafter Plaintiff continued to contact defendant Sharma, but repeatedly was advised that "it's difficult to place an African American male over forty in the Pittsburgh legal community."  Complain at ¶ 15.  Plaintiff was also asked about the possibility of working in the area of mortgage foreclosures.  Plaintiff indicated that he would be willing to accept the position, but then defendant Sharma made adverse comments about his character, indicating plaintiff was willing to do anything, and then refused to provide directions to the work location.

Subsequently, defendant Sharma suggested that plaintiff "change" his career and revise his resume because "it's difficult to place an African American male over forty in the Pittsburgh legal community."  Plaintiff submitted a revised resume as directed.  Complaint at ¶ 17.  Plaintiff continued to call defendant Sharma, who suggested plaintiff seek work selling mortgages. Thereafter, defendant Sharma asked questions about plaintiff's credit history and demanded authorization for a credit check.  Plaintiff objected to defendants obtaining any information concerning his prior credit history.  Complaint at ¶ 19.  In 2005, plaintiff continued to call for employment opportunities but was advised that defendant Sherma was no longer employed by defendants Robert Half International and Robert Half Legal.  The instant lawsuit followed.

Plaintiff alleges he was denied employment based on defendants' belief that it was not possible to place African American males over the age of forty in the Pittsburgh legal community.  Complaint at ¶ 23.  He further asserts that he was denied employment by reason of

apparent race-based animus and all discussions concerning potential permanent placements, the need to change careers/revise his resume and alike were merely a form of pretext to cover the original discriminatory treatment. Complaint at ¶ 24. Based on the above, plaintiff seeks back pay, front pay and compensatory and punitive damages. Complaint at Prayer for Relief.

Defendants answered the complaint and admitted plaintiff completed an employment application on August 30, 2004, scored well on legal terminology and legal typing tests and was advised by defendant Sharma about the placement process utilized by Robert Half Legal. Defendants also admitted that plaintiff received excellent ratings from the interview process. Defendants denied plaintiff's allegations in all other material aspects and set forth numerous other additional defenses, including the failure to plead a prima facia case and the ability to demonstrate that defendants' actions were taken for legitimate non-discriminatory business reasons unrelated to any discriminatory factor. Defendants further averred that plaintiff has suffered no adverse employment action and was not a qualified candidate for any vacant position referenced in the complaint. Answer and Defenses at Additional Defenses, ¶¶ 3, 4-7, 10 & 11.

Within six weeks of filing the complaint plaintiff began to indicate in his pleadings that his claims of discrimination were based exclusively on the denial of an opportunity to be placed with the Pittsburgh office of the law firm of Pepper Hamilton, LLP. Plaintiff first made this court and defendants aware of this construction of his claim(s) when he filed a "Federal Rules of Civil Procedure 12(c) Motion for Judgement" on August 10, 2005 (Doc. No. 7). Therein he alleged:

> The plaintiff alleges: he belongs to a protect class (African American, male, and is over forty); suffered an adverse action; was qualified for the position in question; and, was treated differently from similarly situated members of the unprotected class related to a permanent position with the law firm Pepper Hamilton, LLP.

> The plaintiff further contends that he would have been hired, but for the defendants' apparent intentional discrimination: in response to the Pepper Hamilton position plaintiff was told "it's difficult to place an African American male over forty in the Pittsburgh legal community;" told to change careers; and forced toward other occupations

8

(administrative assistant-data entry; and sales (selling mortgages)).

> There appears to be no dispute that on August 30, 2004, the defendants determined that plaintiff could be a "most preferred candidate" for the only position at issue (Pepper Hamilton permanent position).

Plaintiff's Federal Rules of Civil Procedure 12(c) Motion for Summary Judgment (Doc. No. 6) at ¶¶ 4-7. Plaintiffs repeated these same allegations in his brief in support of the motion. See Brief in Support (Doc. No. 7) at p.3. At that juncture it was plaintiff's position that defendants had admitted "facts sufficient to establish the plaintiff's prima facia case", had failed to mention the Pepper Hamilton permanent position in their answer and therefore failed to articulate some legitimate, non-discriminatory reason for "the only employment action in question" and as a result plaintiff was entitled to summary judgment.

Plaintiff again took the same position in his August 26, 2005 motion for sanctions. See Motions for Sanctions (Doc. No. 9) at ¶ 5 (having failed to articulate any non-discriminatory reason for their failure "to place the plaintiff in the only position at issue, (Pepper Hamilton permanent position), the defendants failed to designate evidence sufficient to raise a genuine issue of material fact."). Throughout that pleading plaintiff repeatedly emphasized that the Pepper Hamilton position was "the only position at issue." Id. at ¶¶ 6-7. This court denied plaintiff's Rule 12(c) motion and his motion for sanctions because discovery had not yet been completed and the record failed to support his requested relief. See Orders of October 7, 2005 (Doc. Nos. 12 & 13).

The day after the close of discovery plaintiff filed a motion for sanctions, or in the alternative, for summary judgment. See Motion for Sanctions, or in the Alternative Motion for Summary Judgment (Doc. No. 22) and Brief in Support (Doc. No. 23). Therein, plaintiff again repeatedly emphasized that defendants had "failed to articulate any non-discriminatory reason for their failure to place the plaintiff into the only true position at issue, (Pepper Hamilton permanent position), [and as a result] the defendants failed to designate evidence sufficient to place a

9

genuine issue of material fact." Plaintiff's Motion for Sanctions, or in the Alternative, Summary

Judgment (Doc. No. 22) at ¶ 5 and ¶¶ 2, 4, 11, 12 and 13. Plaintiff took the same position in his

pre-trial narrative statement. See Plaintiff's Pretrial Statement (Doc. No. 28) at 3-5.

 Plaintiff also made it clear during the course of his deposition that his discrimination

claims were limited to the Pepper Hamilton permanent position. Plaintiff explained:

> In all these documents that you provided, there is not one
> piece of evidence that provides an explanation as to why I was not
> referred to their Pepper Hamilton job. We can continue to go over my
> writings. But there's nothing in here that provides-nothing that you
> have asked me to review that provides any sort of explanation as to
> why I wasn't referred to Pepper Hamilton. That's the issue.
>
> If you want to continue for 300 more pages of my writings, we
> will be here all night.
>
>    * * *
>
> We have gone months over the same thing. I filed pleadings.
> You are not addressing the Pepper Hamilton position. We are here doing
> a deposition. You are doing the same thing. You are not addressing
> the point at issue. The point at issue is the Pepper Hamilton job.
> That's the only thing that needs to be resolved.
>
> You are going on a fishing expedition which is delaying the
> inevitable. You have to get to the Pepper Hamilton.

Transcript of Todd Elliott Koger's Deposition of January 11, 2006 (Doc. No. 68-1) at 156-158.

Plaintiff continued to maintain this position concerning the scope of the litigation until

defendants file their pretrial narrative statement and motion for summary judgment.

 Defendants contend that summary judgment is appropriate because plaintiff has

conclusively limited the scope of the litigation to the Pepper Hamilton position and the

undisputed evidence demonstrates that Pepper Hamilton withdrew the position from

consideration before defendants were able to fill it. Defendants thus assert that plaintiff has

suffered no adverse employment action regarding the only position at issue, cannot establish a

prima facia case of unlawful discrimination and is unable to advance any credible evidence of

pretext in any event.

In response, plaintiff maintains that defendants became sloppy, mistakenly believed that plaintiff's case somehow boiled down to only the Pepper Hamilton assignment and recklessly abandoned all remaining issues in the case.  Furthermore, plaintiff maintains that defendants failed to explain all of the job assignments at issue in a timely manner and their pleadings establish liability in plaintiff's favor or at the very least establish material issues of fact for trial.

Plaintiff is bound by his repeated concession that the Pepper Hamilton permanent position is the only employment opportunity at issue in the case.  Accordingly, the court must limit its review to the sufficiency of plaintiff's evidence pertaining to that position.

"Judicial admissions are binding for the purpose of the case in which the admissions are made[,] including appeals." Glick v. White Motor, Co. 458 F.2d 1287, 1291 (3d Cir. 1972). Statements in pleadings are to be regarded as admissions. Giannone v. U.S. Steel Corp., 288 F.2d 544 (3d Cir. 1956).  Such admissions also include statements and concessions within briefs as well as other submissions to the court. Conte Bros. Automotive, Inc. v. Quaker State Slick 50 Inc., 165 F.3d 221, 235 (3d Cir. 1998).  Thus, the doctrine of judicial admissions binds a party who makes factually-based concessions in pleadings, briefs or other documents filed during the course of litigation. Berckeley Investment Group, Ltd. v. Colkitt, 455 F.3d 195, 211 n. 20 (3d Cir. 2006) (citing Parilla v. IAP Worldwide Serv., VI, Inc., 368 F.3d 269, 275 (3d Cir. 2004).

"To be binding, judicial admissions must be unequivocal." Glick, 458 F.2d at 1291. Such admissions arise from deliberate, clear and unequivocal statements made by a party. Electric Mobility Corp. v. Bourns Sensors/Controls, Inc., 87 F. Supp. 2d 394 (D. NJ. 2000) (collecting cases in support).  Judicial admissions are limited to factual matters within the context of the litigation and do not extend to an opponent's conception of legal theories that the parties think applicable to the facts at hand. New Amsterdam Casualty Co. v. Waller, 323 F.2d 20, 24 (4th Cir. 1963).  Mere contentions and argument likewise do not rise to the level of judicial admissions. Suadi v. Acomarit Maritime Services, S.A., 245 F. Supp.2d 662, 680 (E.D. Pa.

11

2003).  Once made, the subject matter of a judicial admission should not be reopened in the absence of exceptional circumstances, such as where an admitted fact is clearly untrue or a party was laboring under a mistake when the admission was made.  Id.

Plaintiff repeatedly filed motions with the court premised on the factual averment that "there appears to be no dispute that the plaintiff wasn't placed into the only position at issue (Pepper Hamilton permanent position)."  Plaintiff's Brief in Support of Rule 12(c) Motion for Judgment (Doc. No. 7) at 2.  He advanced the statement that the only employment opportunity at issue was the Pepper Hamilton permanent position to defense counsel and the court on multiple occasions.  Consequently, plaintiff is bound by his concession regarding the factual basis for and scope of his claims of discrimination.  See Berckeley Investment Group, Ltd., 455 F.3d at 211-12 (holding that a party was bound by express concessions contained in pleadings submitted in the district court and on appeal); Parilla, 368 F.3d at 275 (a party is bound by the formal concessions contained in its pleadings or stipulations) (collecting cases in support).

Furthermore, plaintiff's concession in his deposition that he had elected to limit his claims of discrimination to the Pepper Hamilton permanent position provides an additional ground for estopping plaintiff from contending otherwise.  "There is no question that it is appropriate to consider a party's admission made in a deposition in determining whether there is a genuine issue of fact for the purpose of summary judgment."  Lazovick v. Sun Life Ins. Co. of America, 586 F. Supp. 918, 926 (E.D. Pa. 1984) (citing Western Union Telegraph Co. v. N.C. Direnzi, Inc., 442 F. Supp. 1, 4 (E.D. Pa. 1977)).  Plaintiff's concession in the midst of his deposition led defense counsel to believe plaintiff's discrimination claims were limited to that one opportunity.  To permit plaintiff to retract such a concession at this juncture would (1) permit plaintiff to shelter himself from appropriate inquiry regarding other opportunities potentially placed at issue by his complaint during deposition and (2) prejudice the defendant as a result of such tactical maneuvering.  Such an approach cannot be countenanced by the court.  See Sobratti v. Tropical Shipping & Const. Co., Ltd., 267 F. Supp. 2d 455, 463 (D. V. I. 2003) ("given the

seriousness of pleadings and to 'preserve the integrity of the courts by preventing litigants from playing fast and loose with the courts' in offering intentional self-contradictions, factual assertions in pleadings are binding on the party asserting the fact, absent a later amendment.") (collecting cases in support); Martin v. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703, 706 (3d Cir. 1988) (discussing the inability of party to contradict prior deposition testimony with a later-filed affidavit to defeat summary judgment and holding that "the objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit"). In other words, plaintiff "is precluded from retreating from [his factual affirmation that Pepper Hamilton was the only employment opportunity at issue] ... simply to avoid summary judgment." Sobratti, 267 F. Supp.2d 463 (collecting cases in support).

The record conclusively demonstrates that plaintiff has failed to establish a prima facia case with regard to the Pepper Hamilton permanent position. The record unequivocally demonstrates that Pepper Hamilton withdrew the order for placement before Robert Half Legal was able to put any candidate in the position. See Defendant's Statement of Material Facts at ¶¶ 56-57. Consequently, defendants could not have engaged in any adverse action against plaintiff with regard to the sole employment opportunity plaintiff has placed at issue. See Morgan v. Federal Home Loan Mortgage Corp., 172 F. Supp.2d 98, 112 (D. D.C. 2001) ("there can be no finding of an adverse action if there was no vacancy at the time plaintiff applied or the position was never filled."); Ware v. Billington, 344 F. Supp.2d 63, 73 (D. D.C. 2004) (a plaintiff cannot make out a Title VII prima facia case based on an allegation that the employer failed to place the plaintiff when "there was no job vacancy") (collecting cases in support). Because it is impossible for plaintiff to demonstrate that he suffered an adverse employment action with regard to the only employment opportunity at issue, defendants are entitled to summary judgment.

Furthermore, defendants also are entitled to summary judgment because plaintiff cannot establish that defendants treated any other similarly situated candidate more favorable than plaintiff with regard to the Pepper Hamilton permanent position. Plaintiff has failed to produce

any evidence that defendants treated a similarly situated employee not in the protected class more favorably than plaintiff with regard to the Pepper Hamilton permanent position. The record clearly and unequivocally demonstrates that defendants did not place any candidate with Pepper Hamilton at anytime made relevant by plaintiff's charge of discrimination. Pepper Hamilton withdrew the opening before defendants had any opportunity to place a candidate. Plaintiff has not advanced any evidence to demonstrate that defendants sent other recruits for interviews with Pepper Hamilton after plaintiff was interviewed but before it withdrew the opening. Consequently, plaintiff has failed to raise even an inference that defendants treated some people less favorably than others with regard to the employment opportunity in question. Such a shortcoming is fatal to plaintiff's claims at summary judgment. See e.g. Sarullo, 352 F.3d at 798-99 (a plaintiff's failure to raise an inference of discriminatory animus and attempt to support a claim through nothing more than a personal assumption of discrimination in the face of the employer's explanation is insufficient to defeat a motion for summary judgment); Iyer v. Everson, 382 F. Supp.2d 749, 757 (E.D. Pa. 2005) (attorney/employee who failed to demonstrate the employer continued to seek out individuals with qualifications similar to the employee's to fill a vacant position did not present "circumstances that raise an inference of discriminatory action" and thus failed to establish the fourth element of a prima facia case, entitling the employer to summary judgment).

Moreover, even assuming for the purpose of argument that plaintiff's prior concessions concerning the scope of the litigation should be overlooked, plaintiff's evidence nevertheless is insufficient to support a finding of pretext on any employment opportunity raised in the litigation. Plaintiff's claims essentially are premised on the following: (1) plaintiff responded to a newspaper ad placed by Robert Half Legal seeking candidates for potential placement; (2) plaintiff completed the appropriate forms and passed the initial screening tests with high marks; (3) defendant Aparna Sharma interviewed plaintiff and rated him a most preferred candidate for placement with one potential client; (4) plaintiff believed he had been hired by Robert Half Legal

14

and would receive directions on where to report within a short period of time; (5) when plaintiff did not receive directions, he called defendant Sharma, who explained "its difficult to place an African American male over forty in the Pittsburgh legal community." Complaint at ¶ 11. Defendant then asked plaintiff if he would be interested in other positions and plaintiff responded affirmatively. Complaint at ¶ 14. Plaintiff continued to contact defendant Sharma, but repeatedly was advised that the difficulty remained. Complaint at ¶ 15. Each time defendant Sharma suggested another employment opportunity for plaintiff, plaintiff responded affirmatively, but did not receive directions to the client's business location. Defendant Sharma suggested that plaintiff improve his resume, which plaintiff did. Complaint at ¶ 17. Defendant Sharma suggested that plaintiff consider working in the mortgage industry. Complaint at ¶ 18. Thereafter, defendant Sharma asked plaintiff about his credit history.  Plaintiff was never placed by defendants and in 2005 plaintiff learned that defendant Sharma was no longer employed by Robert Half Legal. Complaint at ¶¶ 19 & 20.

Defendants have come forward with affirmative evidence indicating (1) they could not hire any potential candidate for Robert Half Legal's customers because the decision to hire was reserved exclusively to Robert Half Legal's clients; (2) defendant Sharma rated plaintiff favorably, provided him with advice on how to make his resume better appeal to Robert Half Legal's clients and circulated plaintiff's revised resume to clients; and (3) defendant Sharma repeatedly tried to place plaintiff. Of the three positions referenced by plaintiff, Pepper Hamilton withdrew the opening before any candidate was placed in it by Robert Half Legal, another prospective employer chose a candidate who had a law degree, which plaintiff did not, and plaintiff's personal bankruptcy history became a barrier to defendant Sharma's efforts to place plaintiff with the employer that had a  position involving mortgages. Plaintiff thereafter stopped contacting defendants, which was common because candidates often find other employment.

Defendants have met their burden of advancing a non-discriminatory explanation for their actions in conjunction with trying to find plaintiff employment.  They have advanced competent

15

evidence to demonstrate that they treated plaintiff as any other candidate during the interview and initial testing process.  They assisted plaintiff in an effort to make him an attractive candidate to potential employers and forwarded his resume to a number of clients.  Defendants were unable to place plaintiff because (1) the key position he sought was withdrawn before any candidate could be placed in the position; (2) one client chose another candidate over plaintiff because that candidate had a doctorate of jurisprudence, and (3) plaintiff's prior personal bankruptcy removed him from consideration under a mortgage company's specified criteria.  These circumstances are sufficient to meet defendants' burden of production to articulate a legitimate, non-discriminatory explanation in response to the allegations comprising plaintiff's purported prima facia case.

Plaintiff has failed to advance sufficient evidence to permit the finder of fact to conclude that defendants' proffered explanation is a pretext for unlawful discrimination.  Plaintiff's attempt to attribute great weight to the alleged statement by defendant Sharma is unavailing. Plaintiff's verified complaint indicates that the actual statement was: "it is difficult to place an African American man over forty in [the] Pittsburgh legal community."  It was not, as plaintiff subsequently has contended in his unsupported briefs, that defendant Sharma believed it was "not possible" to place such an individual.  Plaintiff's subtle attempt to embellish his original sworn account of the statement is typical yet unavailing.

Moreover, the statement was not made by an actual decision-maker during the course of a decision-making process involving plaintiff's employment.  There is no competent evidence to demonstrate that plaintiff was in fact hired and under the employment of Robert Half Legal.  The record clearly demonstrates that the clients of Robert Half Legal exercised any and all relevant decision-making authority.  Consequently, even assuming the asserted statement was made by defendant Sharma, it is far from the poisonous venom claimed by plaintiff and is entitled to little weight in the sufficiency of the evidence analysis mandated by defendants' motion.  See Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) (stray remarks by non-decision makers or even by decision-makers unrelated to the decision process are minimally

probative, particularly where such statements are made in a context removed from the actual decision-making process); <u>Silver v. American Institute of Certified Public Accounting</u>, 2006 WL 3511342, *2 (3d Cir. 2006) ("We note that stray remarks by decision-makers unrelated to the decision-making process, are rarely given weight, particularly if they are made temporally remote from the date of the decision."); <u>Fletcher v. Lucent Technologies, Inc.</u>, 2006 WL 2844262, *2 (3d Cir. 2006) (same).

     Plaintiff's attempt to discredit defendants' proffered explanation by proving that they did not timely contact his references is misplaced. Defendants certainly were entitled to presume that plaintiff's references would speak well of him and corroborate the information he had relayed to defendants. The fact that defendants did not contact one of plaintiff's references until he filed the instant lawsuit does not undermine in any way defendants' account of the course of action undertaken in an effort to place plaintiff. Defendant Sharma gave plaintiff high marks and thought very favorably of him after the interviewing process. She worked with plaintiff to make his resume more attractive and circulated it to clients that had potential openings. Under such circumstances there would be no reason to follow-up with plaintiff's references and every reason to continue to forward plaintiff's resume to clients who might elect to interview plaintiff for a prospective position. Thus, the possible "smoking gun" plaintiff advances through the declaration of Charlene McAbee is in actuality nothing more than "smoke and mirrors."

     Similarly, plaintiff's attempt to overcome his failure to follow-up with Robert Half Legal after the fall of 2004 by reference to Kathryn Christopher, a Caucasian female over forty years of age, who was contacted by the Pittsburgh office of Robert Half International and offered various employment opportunities despite having not contacted that office for more than a year, is not competent proof that plaintiff was treated differently. To have any relevancy, plaintiff must demonstrate "that [defendants] treated other similarly situated persons not of [the] protected class more favorably." <u>Fuentes</u>, 32 F.3d at 765. In doing so plaintiff simply "cannot selectively choose a comparator." <u>Simpson v. Kay Jewelers</u>, 142 F.3d 639, 645 (3d Cir. 1998). "To be

deemed similarly situated, the comparator must be roughly equivalent to the person in question."
Gazarov v. Diocese of Erie, 80 Fed. Appx. 202, 205 (3d Cir. 2003) (citing Perkins v. Brigham &
Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996)).

Plaintiff bears the burden of proving sufficient similarity of comparators and sufficient
disparity of treatment to create a triable issue of fact on pretext. Id.; Leyua v. Computer Science
Corp., 169 Fed. Appx. 720, 725-26 (3d Cir. 2006). Unlike Christopher, plaintiff did not even
wait a year before he elected to sue defendants over what he claims was a discriminatory failure
to place him in a position that was withdrawn before defendants could fill it. Thus, plaintiff's
action precluded any comparison of the similarity of treatment over an extended period of time.

Moreover, as with the other eight assignments which plaintiff references, plaintiff has
failed to demonstrate in a competent manner that he and the individuals were situated in a
sufficiently similarly manner. In this regard, with the exception of Dale McFeatters, no
information is provided by plaintiff about Christopher or any of the other placements. Dale
McFeatters, of course, clearly was not similarly situated to plaintiff because McFeatters had
obtained a law degree – an attribute the actual employer apparently found to be important. In any
event, the record unequivocally demonstrates that defendant Sharma treated plaintiff and
McFeatters equally in that she forwarded both of their resumes to the client for consideration and
thus gave each candidate an equal opportunity to be considered by the prospective employer.
The law required nothing more of defendants.

Plaintiff's obligation at this juncture is to come forward with affirmative evidence that
will support a finding of pretext. He cannot simply advance factually unsupported allegations
and rely on conclusory statements and propositions set forth in memoranda and briefs. To the
extent plaintiff has come forward with actual evidence, it is merely colorable and lacks sufficient
probative force to support a finding that any of the defendants acted with discriminatory animus
or treated him less favorably than others with whom he was truly similarly situated.
Accordingly, defendants' are entitled to summary judgment on all claims raised in the litigation.

For the reasons set forth above, defendants' motion for summary judgment will be granted on all claims advanced by plaintiff.  An appropriate order will follow.

Date: _March 7, 2007_

David Stewart Cercone
United States District Judge


cc:     Todd Elliott Koger
        515 Kelly Avenue
        Pittsburgh, PA 15221

        Gregory A. Miller, Esquire
        Jaime S. Tuite, Esquire
        Buchanan Ingersoll PC
        20th Floor, One Oxford Centre
        301 Grant Street
        Pittsburgh, PA 15219

19